OPINION
 

 By the Court, Maupin, J.:
 

 The trial jury below found appellant Martha Flores (Flores) guilty of first-degree murder by child abuse. The victim was her
 
 *708
 
 five-year-old stepdaughter, Zoraida Flores. Postmortem findings confirmed that the child had been physically abused, that her death was caused by blunt-force trauma to the head, and that Flores was present during the events surrounding the child’s demise. Flores, however, denied any wrongdoing in connection with the child’s death. The only direct proof in support of the State’s theory of murder by child abuse came in the form of surrogate hearsay testimony, through which Flores’s five-year-old daughter became her mother’s accuser without testifying at trial. Thus, we examine the admissibility of such surrogate testimony under the recent United States Supreme Court decision in
 
 Crawford v. Washington.
 

 [1]
 

 We conclude that, per
 
 Crawford,
 
 the admission of the daughter’s hearsay statements violated the Confrontation Clause of the Sixth Amendment to the United States Constitution, that the violation was not harmless beyond a reasonable doubt, and that Flores is therefore entitled to a new trial.
 

 FACTS AND PROCEDURAL HISTORY
 

 Jose and Martha Flores resided together in a Las Vegas apartment with Jose’s five-year-old daughter Zoraida, Martha’s daughters and mother, and an infant. Jose Flores worked to support the family, and Martha Flores stayed home to take care of the children. The record reflects that the family labored under the considerable stress of cramped living arrangements and economic pressures. On January 28, 2001, while Jose was away at work, emergency medical personnel responded to the apartment to provide assistance to Zoraida. Finding no pulse or breath intake, paramedics attempted to resuscitate the child but were unsuccessful. A postmortem examination of the body revealed numerous bruises and bite marks at different stages of healing. The coroner concluded that death was occasioned by blunt trauma to the head.
 

 Flores provided Las Vegas Metropolitan Police Department (LVMPD) detectives with her account of the events in question, stating first that she found Zoraida that morning in her bedroom in distress and having trouble breathing. Upon taking the child in her arms, she found that Zoraida was limp and damp, as if she had “wet the bed.” Flores claimed that she took Zoraida into the master bathroom and attempted to revive her with water from the shower and by waving rubbing alcohol under her nose. According to Flores, she then went to a neighbor for help because she did not understand what was wrong with the child and had no telephone in her apartment. Flores acknowledged that she had previously tried
 
 *709
 
 to cover a braise around Zoraida’s eye with makeup when they went out in public, in part to avoid questions from police.
 

 Upon further investigation, officers found wet, urine-stained children’s clothing and an open bottle of rubbing alcohol. They also observed standing water in the shower and on the bathroom floor. Crime scene investigators found no evidence of blood or physical damage to the shower or bathroom walls. This investigation supported Flores’s version of the incident.
 

 The only eyewitness to these events was Flores’s daughter, Sylvia. Sylvia later told child abuse investigators and her foster mother, Yolanda Diaz, that Flores struck Zoraida during a struggle in a bathroom shower, that the blow caused the child to strike her head and lose consciousness, and that Zoraida never woke up.
 

 The State charged Flores with one count of first-degree murder by child abuse. After conducting a hearing during which Sylvia and Diaz testified, the district court granted the State’s pretrial motion to admit Sylvia’s out-of-court statements under NRS 51.315(1).
 
 [2]
 
 In this, the district court found that Sylvia was unavailable as a witness, observing that, based upon her emotional state, she did not wish to discuss the case and that “it’s very obvious to the court, she’ll not talk about it.” The court also found strong assurances of the accuracy of the statements, given their consistency and corroboration by medical experts. Accordingly, Sylvia did not testify at trial. Rather, the State introduced Sylvia’s hearsay statements through the testimony of LVMPD child abuse investigator Sandy Durgin, Child Protective Services investigator Carolyn Godman, and Yolanda Diaz.
 

 Durgin testified at trial to Sylvia’s statements that she heard Zoraida crying in the bathroom and her mother trying to get Zoraida to take a shower, and that “Zoraida was struck by her mother[,] and that her head hit the door and she fell to the ground and didn’t get up again.” Durgin stated that she utilized open-ended questions during the interview and tried not to influence Sylvia’s statements. Godman testified to Sylvia’s statements that Zoraida hit Flores on the leg during an argument; that Flores struck Zoraida causing the child to fall to the floor; and that, when Zoraida did not respond, Flores and Sylvia carried her to a bed in the apartment. Although Godman agreed that her interview was not optimal because of prompting to obtain verbal responses, she stressed that Sylvia provided specific information about the assault in response to several open-ended inquiries. Diaz testified to a later spontaneous statement by Sylvia that
 

 
 *710
 
 Zoraida peed on her pants and my mom hit her, took her in the shower and hit her, and Zoraida slipped and hit her head. And my mom gave her some medicine and she never woke up.
 

 In addition, a police witness described Flores’s comparative lack of remorse at the loss of the child, and Jose Flores testified that neither Flores nor her family attended the funeral.
 

 Dr. Elizabeth Richitt, a psychologist, testified for the defense. Although criticizing Godman’s interview techniques, Dr. Richitt agreed that Sylvia consistently recounted the core facts giving rise to the prosecution.
 

 The jury found Flores guilty of first-degree murder by child abuse. Thereafter, the district court entered judgment on the verdict and sentenced Flores to a term of life imprisonment with the possibility of parole in twenty years. As part of the judgment, the district court awarded Flores credit for 344 days spent in local custody prior to sentencing, ordered genetic marker testing, and ordered that Flores pay $3,000 in restitution. Flores filed her timely notice of appeal.
 

 Flores seeks reversal and a new trial, contending that the district court improperly admitted Sylvia’s hearsay statements, failed to replace the panel of prospective jurors after exposure to a prejudicial influence in the courtroom, erred in admitting gruesome autopsy photographs, evidence that Flores and her family failed to attend Zoraida’s funeral, and testimony from police that compared the emotional reactions of Flores and her husband, and finally, that the district court committed judicial misconduct.
 

 DISCUSSION
 

 This appeal primarily concerns a claim that admission of evidence pursuant to a general, or residual, exception to the rule against hearsay violated the Confrontation Clause of the Sixth Amendment to the United States Constitution.
 

 By way of history, the Confrontation Clause did not apply to the states prior to the 1965 United States Supreme Court case of
 
 Pointer v. Texas.
 

 [3]
 

 Until then, confrontation rights in state courts were largely protected under the state formulations of the hearsay rule.
 
 [4]
 
 In 1980, the Court handed down its decision in
 
 Ohio
 
 v.
 
 Roberts,
 

 [5]
 

 which largely defined federal confrontation rights in
 
 *711
 
 terms that mirrored hearsay doctrine. Because the
 
 Roberts
 
 approach allowed admission of hearsay statements without the benefit of actual confrontation,
 
 i.e.,
 
 cross-examination, the Court recently, in
 
 Crawford v. Washington,
 

 [6]
 

 overturned
 
 Roberts
 
 to the extent that it related to “testimonial” statements.
 
 [7]
 
 This change in doctrine came in response to a national debate over the original intent of the framers of the Sixth Amendment, and the differing considerations underlying hearsay doctrine and the Confrontation Clause. Certainly,
 
 Crawford
 
 will have considerable impact upon the prosecution of criminal cases in Nevada.
 

 Admission of hearsay testimony and the Confrontation Clause
 

 The district court in this case admitted the three hearsay statements under NRS 51.315(1), based upon Sylvia’s “unavailability” and the court’s findings that the statements were reliable. NRS 51.315(1) provides:
 

 A statement is not excluded by the hearsay rule if:
 

 (a) Its nature and the special circumstances under which it was made offer strong assurances of accuracy; and
 

 (b) The declarant is unavailable as a witness.
 

 Sylvia was the only eyewitness to the events in question. Because the State presented Sylvia’s account through surrogates, thus avoiding any cross-examination, and because the Confrontation Clause applies to the states through the Fourteenth Amendment under
 
 Pointer,
 
 the district court’s ruling implicated Flores’s confrontation rights under
 
 Roberts,
 
 which was the controlling precedent at the time of the ruling.
 

 Ohio v. Roberts
 

 In
 
 Roberts,
 
 the United States Supreme Court articulated two criteria under the Sixth Amendment for the admission of hearsay statements where the declarant is unavailable for cross-examination.
 
 [8]
 
 First, the prosecution must demonstrate that the declarant is unavailable.
 
 [9]
 
 Second, the district court may admit the hearsay statement if it either: (1) falls within a “firmly rooted” hearsay exception, or (2) the statement reflects “particularized guarantees of trustworthiness.”
 
 [10]
 
 Thus, as noted,
 
 Roberts
 
 largely
 
 *712
 
 embraced federal hearsay doctrine as the formula for evaluating whether violations of the Confrontation Clause had occurred.
 
 [11]
 

 Flores asserts that the district court erred in admitting Sylvia’s out-of-court hearsay statements because they were highly unreliable under the
 
 Roberts
 
 test, thus violating her Sixth Amendment right of confrontation. While we disagree with Flores’s assessment of reliability under
 
 Roberts
 
 and would affirm the district court under the
 
 Roberts
 
 test, we are compelled to examine the propriety of admitting the three hearsay statements under
 
 Crawford
 
 v.
 
 Washington,
 
 which, during the pendency of this appeal, overruled
 
 Roberts
 
 with respect to testimonial hearsay.
 
 [12]
 
 Because the district court adhered to the then-valid
 
 Roberts
 
 test when it made the critical rulings below, and because
 
 Crawford
 
 changes the entire construct under which hearsay evidence, including hearsay evidence involving child declarants, may be introduced without offense to the Confrontation Clause, the transition from
 
 Roberts
 
 to
 
 Crawford
 
 is briefly discussed below.
 

 Application of Ohio v. Roberts to cases involving child witnesses
 

 In the modern context, prosecutorial agencies nationwide have developed the concept of “victimless prosecutions” in cases involving child witnesses.
 
 [13]
 
 Under
 
 Roberts,
 
 surrogates could testify to out-of-court statements made by child witnesses who, because of age or immaturity, might be too intimidated to testify in court. In
 
 Idaho v. Wright,
 
 the United States Supreme Court addressed this prosecuto-rial approach by setting forth a nonexclusive set of factors to guide consideration of the trustworthiness of a child witness’s hearsay statements: (1) “spontaneity and consistent repetition,” (2) the “mental state of the declarant,” (3) “use of terminology unexpected of a child of a similar age,” and (4) “lack of motive to fabricate.”
 
 [14]
 

 NRS 51.385 tracks the
 
 Idaho
 
 v.
 
 Wright
 
 model:
 

 1. In addition to any other provision for admissibility made by statute or rule of court, a statement made by a child under the age of 10 years describing any act of sexual conduct
 
 *713
 
 performed with or on the child or any act of physical abuse of the child is admissible in a criminal proceeding regarding that act of sexual conduct or physical abuse if:
 

 (a) The court finds, in a hearing out of the presence of the jury, that the time, content and circumstances of the statement provide sufficient circumstantial guarantees of trustworthiness; and
 

 (b) The child testifies at the proceeding or is unavailable or unable to testify.
 

 2. In determining the trustworthiness of a statement, the court shall consider, without limitation, whether:
 

 (a) The statement was spontaneous;
 

 (b) The child was subjected to repetitive questioning;
 

 (c) The child had a motive to fabricate;
 

 (d) The child used terminology unexpected of a child of similar age; and
 

 (e) The child was in a stable mental state.
 

 In
 
 Bockting v. State,
 
 a child sexual assault case in which the State presented the victim’s account through surrogate testimony, we upheld the validity of NRS 51.385 under
 
 Roberts
 
 and
 
 Wright.
 

 [15]
 

 Crawford
 
 v.
 
 Washington
 

 Between 1980 and 2004, courts nationwide followed the lead of
 
 Roberts.
 
 As noted, we did so as well, applying
 
 Roberts
 
 in
 
 Bockt-ing.
 
 Over time, it became apparent to members of the Court and commentators that the admission of “testimonial” hearsay statements under
 
 Roberts
 
 substituted judicial determinations of reliability for the actual confrontation contemplated by the drafters of the Confrontation Clause. Interestingly, as we observed in
 
 Bockting,
 
 under
 
 Wright
 
 and
 
 Roberts
 
 “the Confrontation Clause does not invariably require the right to confront.”
 
 [16]
 
 Thus, arguably, an improper conflation of the Confrontation Clause and “ordinary hearsay doctrine” had evolved.
 
 [17]
 
 Finally, in 2004, concluding that
 
 *714
 
 the use of reliability determinations under
 
 Roberts
 
 served to undermine an accused’s right to confront witnesses under the Sixth Amendment, and agreeing that this practice subverted the original intent of its drafters, the Supreme Court issued its opinion in
 
 Crawford
 
 v.
 
 Washington
 
 and overruled
 
 Roberts
 
 as applied to “testimonial statements.”
 
 [18]
 
 In summary, the Court held that if a witness is unavailable to testify at trial and the out-of-court statements sought to be admitted are “testimonial,” the Sixth Amendment Confrontation Clause requires actual confrontation,
 
 i.e.,
 
 cross-examination.
 
 [19]
 
 The Court stated:
 

 Where nontestimonial hearsay is at issue, it is wholly consistent with the Framers’ design to afford the States flexibility in their development of hearsay law — as does
 
 Roberts,
 
 and as would an approach that exempted such statements from Confrontation Clause scrutiny altogether. Where testimonial evidence is at issue, however, the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination. . . .
 

 . . . [Thus, w]here testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation.
 
 [20]
 

 The Court stressed that admissibility of testimonial evidence should not be subject to what it characterized as amorphous and highly subjective judicial determinations of reliability.
 
 [21]
 
 In this, the Court further observed:
 

 Admitting statements deemed reliable by a judge is fundamentally at odds with the right of confrontation. To be sure, the Clause’s ultimate goal is to ensure reliability of evidence, but it is a procedural rather than a substantive guarantee. It com
 
 *715
 
 mands, not that the evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination. . . .
 

 The
 
 Roberts
 
 test allows a jury to hear evidence, untested by the adversary process, based on a mere judicial determination of reliability. It thus replaces the constitutionally prescribed method of assessing reliability with a wholly foreign one. ...
 

 Dispensing with confrontation because testimony is obviously reliable is akin to dispensing with jury trial because a defendant is obviously guilty. This is not what the Sixth Amendment prescribes.
 
 [22]
 

 A 1998 article by Professor Richard Friedman provides an illustration as to why the Court ultimately reversed course in
 
 Crawford:
 

 If, apart from reliability considerations, a given statement would fit within the Confrontation Clause, I think it is most unsatisfactory to say to the accused, in effect:
 

 Yes, we understand that you have not had an opportunity to cross-examine this person who has made a testimonial statement against you. Do not trouble yourself. The law in its wisdom deems the statement to be so reliable that cross-examination would have done you little good.
 
 [23]
 

 To summarize,
 
 Crawford
 
 clearly rejects the notion that reliability determinations may serve as a substitute for cross-examination of “testimonial” hearsay. With regard to such statements,
 
 Crawford
 
 attempts to preserve the distinction between hearsay eviden-tiary principles and the right of confrontation under the Sixth
 
 *716
 
 Amendment.
 
 [24]
 
 While the protections afforded by the hearsay rules and the Confrontation Clause overlap and generally protect similar values, their protections are not, as demonstrated in
 
 Crawford,
 
 exactly congruent.
 
 [25]
 

 Testimonial hearsay
 

 In abandoning the
 
 Roberts
 
 test for admission of “testimonial hearsay,” the Court expressly declined to provide a comprehensive definition of that term.
 
 [26]
 
 The Court, however, went on to identify several “formulations of [a] core class of ‘testimonial’ hearsay” from the briefs submitted, including: (1)
 
 “ex parte
 
 in-court testimony or its functional equivalent,”
 
 e.g.,
 
 “affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially”; (2) “‘extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions’ and (3) “ ‘statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.’ ”
 
 [27]
 
 The Court also observed that “under any definition” ex parte testimony at a preliminary hearing is testimonial and “under even a narrow standard” statements made to law enforcement officers in the course of interrogations are testimonial.
 
 [28]
 

 Beyond exclusion of traditional hearsay exceptions such as the use of business records, the examples provided in
 
 Crawford
 
 delineate no clear-cut method for determining what type of hearsay statements are testimonial for the purpose of the Confrontation Clause. Certainly, courts nationwide have encountered considerable difficulty in negotiating the fine line between the testimonial examples and nontestimonial hearsay left for resolution under
 
 Roberts.
 

 [29]
 

 
 *717
 
 As stated by the Chief Justice in Crawford:
 

 The Court grandly declares that “[w]e leave for another day any effort to spell out a comprehensive definition of ‘testimonial.’ ” But the thousands of federal prosecutors and the tens of thousands of state prosecutors need answers as to what beyond the specific kinds of “testimony” the Court lists, is covered by the new rule. They need them now, not months or years from now.
 
 [30]
 

 In short,
 
 Crawford
 
 requires trial and appellate courts around the country to determine on a case-by-case basis whether statements are testimonial for Sixth Amendment purposes.
 

 Unfortunately, over and above the examples provided by the Court, the academic debate that preceded
 
 Crawford
 
 is instructive but not definitive. In Professor Friedman’s view, the issue is resolved based upon the hearsay declarant’s intent; that is, regardless of whether the statement is made to authorities, it is testimonial if the declarant anticipated, desired or expected that it would be used in the prosecution or investigation of a crime.
 
 [31]
 
 Other commentators, such as Professor Akhil Amar, take issue with Friedman’s view and would restrict the Confrontation Clause to those witnesses who make formalized statements to authorities.
 
 [32]
 
 
 *718
 
 The
 
 Crawford
 
 majority seemingly embraces elements of both views.
 
 [33]
 

 The task set by the Court is not as daunting as claimed by judges and prosecutors in the wake of
 
 Crawford.
 
 The Court has simply redirected the analytics necessary to resolve issues under the Confrontation Clause. As discussed below,
 
 Crawford
 
 does not restrict the scope of the term “testimonial” to formalized statements made to authorities, as suggested by Professor Amar, and does not precisely restrict the term to statements made to authorities or others with the
 
 actual
 
 intent or anticipation that the statement be used in the prosecution or investigation of a crime, as suggested by Professor Friedman. These views, however, provide some context for these determinations. With this in mind, we now turn to an examination of whether Sylvia’s statements were testimonial for the purposes of the Confrontation Clause. In this, we will utilize the illustrations provided by the Court in
 
 Crawford.
 

 As noted, the first illustration includes ex parte in-court testimony, functional equivalents such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, and “similar pretrial statements that declarants would reasonably expect to be used prosecutorially.”
 
 [34]
 
 We conclude that Sylvia’s statements to the three surrogates do not qualify as “testimonial” under the first illustration. First, the statements to the
 
 *719
 
 surrogates were not in the form of prior testimony or affidavits. Second, given Sylvia’s age and relationship to Flores, it is unlikely that she intended to testify through the surrogates or that she “reasonably expected” that the statements would be used criminally against her mother. Likewise, none of her statements were in a form described in the Court’s second illustration. They were not ‘ ‘ ‘extrajudicial statements . . . contained in formalized testimonial materials.’ ”
 
 [35]
 

 We conclude, however, that two of Sylvia’s statements were “testimonial” under the third illustration, as they were statements that, under the circumstances of their making, “ ‘would lead an
 
 objective witness
 
 reasonably to believe that the statement would be available for use at a later trial.’ ”
 
 [36]
 
 Under the third illustration the Court impliedly establishes a “reasonable person” test for when a declarant has made a testimonial statement. Applying this third test, we conclude that the statements to Durgin and Godman were clearly testimonial under
 
 Crawford
 
 because both were either police operatives or were tasked with reporting instances of child abuse for prosecution. Thus, although the district court applied then current doctrine when it admitted Sylvia’s hearsay statements, this admission runs afoul of
 
 Crawford,
 
 which we must apply under federal retroactivity rules.
 
 [37]
 
 With regard to the child’s statements to Ms. Diaz, we conclude that these statements, which were spontaneously made at home while Ms. Diaz was caring for the child, were not such that a reasonable person would anticipate their use for prosecutorial purposes. In this, we note
 
 Crawford’s
 
 additional analysis suggesting
 

 that not all hearsay implicates the Sixth Amendment’s core concerns. An off-hand, overheard remark might be unreliable evidence and thus a good candidate for exclusion under hearsay rules, but it bears little resemblance to the civil-law abuses the Confrontation Clause targeted. On the other hand, ex parte examinations might sometimes be admissible under modern hearsay rules, but the Framers certainly would not have condoned them.
 

 The text of the Confrontation Clause . . . applies to “witnesses” against the accused — in other words, those who “bear testimony.” “Testimony,” in turn, is typically “[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact.” An accuser who makes a
 
 *720
 
 formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not.
 
 [38]
 

 We note in passing that the first and second illustrations and the Court’s conclusions regarding statements to authorities during interrogation seemingly meld the Friedman and Amar views. The third illustration takes a more broad approach than that suggested in the Amar view that testimonial statements must be made to the authorities and also provides more confrontation protection than under Professor Friedman’s “intent” based approach for statements given to the authorities and others. Again, the third
 
 Crawford
 
 illustration sets up a “reasonable person” test for when a de-clarant has made a testimonial statement. In line with the Friedman view, statements falling within the third illustration are testimonial regardless of whether such statements are made to authorities.
 

 To conclude, the district court admitted Sylvia’s hearsay statements under NRS 51.315(1), a “catchall” provision in the Nevada evidence code, which provides that a statement is not excluded by the hearsay rule if its nature and the special circumstances under which it was made offer strong assurances of accuracy, and the de-clarant is unavailable as a witness.
 
 [39]
 
 While this procedure, when utilized by the district court, was proper under
 
 Roberts,
 
 and in partial compliance with
 
 Wright,
 
 it cannot pass muster under the new rule set forth in
 
 Crawford.
 

 The district court below considered corroborative medical evidence in assessing reliability under
 
 Wright
 
 and
 
 Roberts.
 
 This was error under
 
 Wright.
 

 [40]
 

 However, the rale prohibiting consideration of corroborative evidence in assessing reliability under
 
 Roberts
 
 does not prohibit the district court on remand from considering the consistency of the Diaz statements with those made to Godman and Durgin in its threshold determination of admissibility of the Diaz statements. Although the Court stated in
 
 Wright
 
 that “particularized guarantees of trustworthiness” must be shown from relevant circumstances, restricted to those surrounding the making of the statement, the Court also stated that consistency of statements is an
 
 *721
 
 important factor in determining admissibility.
 
 [41]
 
 In this, the Court relied upon
 
 State v. Robinson,
 

 [42]
 

 affirming the trial court’s use of other statements to determine reliability.
 

 Accordingly, on remand, the district court must assess the admission of the Diaz statement anew under
 
 Roberts',
 
 in doing so the court may include an assessment of the consistency of the Diaz statements with the other statements that inculpated Flores.
 
 [43]
 

 Harmless error
 

 Having determined that the hearsay statements were testimonial under
 
 Crawford,
 
 we must resolve whether the error compels reversal. Under
 
 Chapman v.
 
 California,
 
 [44]
 
 an appellate court may find some constitutional errors harmless where it is clear beyond a reasonable doubt that the guilty verdict actually rendered in the case was “surely unattributable to the error.”
 
 [45]
 

 Admittedly, the State’s case against Flores was convincing, including substantial evidence of physical abuse; blunt trauma to the head; testimony from a neighbor of repeated loud verbal altercations with expressions of terror coming from the children; testimony from Zoraida’s teacher concerning visible signs of abuse and Flores’s admitted angst toward this child. We conclude, however, that the error requires reversal because the sole direct evidence of the assault came in the form of hearsay statements, two of which were admitted in violation of Crawford's interpretation of the Confrontation Clause.
 

 Miscellaneous claims of error
 

 Flores argues that the district court committed reversible error by admitting four autopsy photos, depicting “the skull, scalp and
 
 *722
 
 peeled-back face of the five-year old child.’ ’ The admissibility of gruesome photographs showing wounds on the victim’s body “lies within the sound discretion of the district court and, absent an abuse of that discretion, the decision will not be overturned.”
 
 [46]
 
 Here, the coroner specifically testified that he needed the photos to fully describe the autopsy and the injuries sustained by the victim. Thus, admission of the contested photographs was well within the discretion vested in the district court.
 

 Flores argues that the district court erred in permitting Jose Flores to testify that neither Flores nor her family attended Zoraida’s funeral. Flores lodged no objection to this line of questioning. “The admissibility of evidence is within the sound discretion of the trial court and will not be disturbed unless manifestly wrong.”
 
 [47]
 
 Additionally, “failure to object will [generally] preclude appellate review of an issue” unless plain error affecting the defendant’s substantial rights is shown.
 
 [48]
 

 Flores argues that the district court committed reversible error by permitting LVMPD Detective Barry Jensen to draw a comparison between the emotional responses exhibited by Jose and Flores in response to Zoraida’s death. We find no manifest error in this ruling. First, evidence regarding Flores’s lack of remorse was probative of her consciousness of guilt. Second, Flores elicited similar testimony from State witnesses she now asserts the district court admitted in error.
 

 We have also considered Flores’s claims that the district court’s comments constituted judicial misconduct that poisoned the trial. While the trial court expressed its frustration with defense counsel, its comments were not so inflammatory as to constitute judicial misconduct.
 

 CONCLUSION
 

 Flores’s primary accuser never testified at trial.
 
 [49]
 
 In short, the State proceeded below under an approach akin to a “victimless”
 
 *723
 
 prosecution, under which surrogates testify in order to protect child witnesses from trauma and intimidation. Such prosecutions were only made possible under the
 
 Roberts
 
 analytical construct. But
 
 Crawford
 
 unwinds
 
 Roberts.
 
 It is therefore evident that
 
 Crawford’s
 
 unequivocal statement of doctrine seemingly portends the demise of many “victimless” prosecutions. Certainly, our prior ruling in
 
 Bockting,
 
 holding that NRS 51.385 is constitutional under
 
 Roberts,
 
 cannot survive analysis under Crawford,
 
 [50]
 

 While Professor Freidman reluctantly suggests a procedure for the use of surrogate witnesses to protect children and facilitate prosecutions involving reticent child witnesses,
 
 [51]
 

 Crawford
 
 contains no indication that such an approach would be validated by the Court. In any event, that procedure was not made available to Flores.
 

 Based upon the recent United States Supreme Court decision in
 
 Crawford v. Washington,
 
 Flores is entitled to a new trial. Therefore, we reverse the judgment of conviction and remand this matter to the district court for proceedings consistent with this opinion.
 

 Becker, C. J., Rose, Gibbons, Douglas, Hardesty and Parraguirre, JJ., concur.
 

 [1]
 

 541 U.S. 36, 59 (2004) (holding that testimonial hearsay statements of a witness who does not appear at trial are inadmissible under the Confrontation Clause of the Sixth Amendment unless the witness is unavailable to testify, and the defendant has had a prior opportunity to cross-examine the witness).
 

 [2]
 

 NRS 51.315(1) states:
 

 A statement is not excluded by the hearsay rule if:
 

 (a) Its nature and the special circumstances under which it was made offer strong assurances of accuracy; and
 

 (b) The declarant is unavailable as a witness.
 

 [3]
 

 380 U.S. 400, 407-08 (1965).
 

 [4]
 

 For example, in Nevada, hearsay is “[a]n out-of-court statement offered at trial to prove the truth of the matter asserted in the statement . . . and is inadmissible unless it falls within one of the recognized exceptions to the hearsay exclusionary rule.”
 
 Franco
 
 v.
 
 State,
 
 109 Nev. 1229, 1236, 866 P.2d 247, 252 (1993) (citing NRS 51.035, 51.065).
 

 [5]
 

 448 U.S. 56 (1980),
 
 overruled, in part by Crawford,
 
 541 U.S. at 36.
 

 [6]
 

 541 U.S. 36.
 

 [7]
 

 The early evolution from
 
 Pointer
 
 through
 
 Roberts
 
 and its progeny is related in Richard D. Friedman,
 
 Confrontation: The Search for Basic Principles,
 
 86 Geo. L.J. 1011, 1014-15 (1998).
 

 [8]
 

 448 U.S. at 66;
 
 see also Bockting
 
 v.
 
 State,
 
 109 Nev. 103, 108, 847 P.2d 1364, 1367 (1993).
 

 [9]
 

 448 U.S. at 66.
 

 [10]
 

 Id.
 

 [11]
 

 See
 
 Fed. R. Evid. 807;
 
 see also
 
 Friedman,
 
 supra
 
 note 7, at 1020-21.
 

 [12]
 

 The appellate briefs in this matter were submitted prior to the decision in
 
 Crawford.
 
 Because the Court decided
 
 Crawford
 
 while this direct appeal was pending, we must apply it in this case.
 
 See Griffith v. Kentucky,
 
 479 U.S. 314, 328 (1987) (holding that new rules of federal constitutional law apply retroactively to all cases pending on direct appeal). After initial briefing by the parties was completed, this court permitted the parties to file supplemental argument addressing the applicability of the
 
 Crawford
 
 decision.
 

 [13]
 

 See
 
 Robert P. Mosteller,
 
 Crawford v. Washington: Encouraging and Ensuring the Confrontation of Witnesses,
 
 39 U. Rich. L. Rev. 511, 607 (2005).
 

 [14]
 

 497 U.S. 805, 821-22 (1990).
 

 [15]
 

 109 Nev. at 108-09, 847 P.2d at 1367-68.
 

 [16]
 

 Id.
 
 at 108, 847 P.2d at 1367. The great lengths taken in
 
 Bockting
 
 to analyze NRS 51.385 under
 
 Roberts
 
 indicates this court’s concern over
 
 Roberts’
 
 treatment of the Confrontation Clause.
 

 [17]
 

 In an article published in 1998, Professor Richard Friedman lamented the melding of the right to confrontation with ordinary hearsay doctrine under
 
 Roberts'.
 

 Even if a statement does not fall within a “firmly rooted” exception [to the hearsay rule], it may yet satisfy the reliability test of
 
 Roberts
 
 if it is supported by “particularized guarantees of trustworthiness.” Once again we see the Confrontation Clause being conformed to ordinary hearsay doctrine. The language is strikingly similar to the key phrase of
 
 *714
 
 the residual hearsay exception as expressed in Federal Rule 807 — “equivalent circumstantial guarantees of trustworthiness.”
 

 Friedman,
 
 supra
 
 note 7, at 1020-21 (footnote omitted).
 

 [18]
 

 541 U.S. at 68. The question of what constitutes a “testimonial” hearsay statement is discussed
 
 infra.
 

 [19]
 

 Id.
 
 at 68-69.
 

 [20]
 

 Id.
 

 [21]
 

 Id.
 
 at 61, 63. The author of the
 
 Crawford
 
 majority, Justice Scalia, noted that the results reached in the Court’s confrontation cases have generally been compatible with the original intent of the Confrontation Clause,
 
 i.e.,
 
 “[t]esti-monial statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine.”
 
 Id.
 
 at 59. He goes on to state, however, that the rationale of
 
 Roberts
 
 creates the potential for “paradigmatic confrontation violations.”
 
 Id.
 
 at 60.
 

 [22]
 

 Id.
 
 at 61-62. As noted by Professor Friedman, a live witness is not excused from cross-examination merely because a trial court might find the direct
 
 in-court
 
 testimony reliable. From this he identifies the anomaly of preserving a rule that would admit a “testimonial”
 
 out-of-court
 
 statement that has never been cross-examined, on such grounds.
 
 See
 
 Friedman,
 
 supra
 
 note 7, at 1028.
 

 [23]
 

 Friedman,
 
 supra
 
 note 7, at 1028-29. The majority opinion in
 
 Crawford
 
 stresses that the drafters of the Confrontation Clause meant to address and prevent the potential injustices that might result from the use of ex parte evidence. In this, the Court points to the Tudor era treason conviction of Sir Walter Raleigh, which was based upon evidence given by an alleged accomplice in a letter and in an ex parte examination by government authorities:
 

 [T]he Framers had an eye toward politically charged cases like Raleigh’s — great state trials where the impartiality of even those at the highest levels of the judiciary might not be so clear. It is difficult to imagine
 
 Roberts’
 
 providing any meaningful protection in those circumstances.
 

 Crawford,
 
 541 U.S. at 68.
 

 [24]
 

 The tendency to blur these principles is illustrated in
 
 Crowley
 
 v.
 
 State,
 
 120 Nev. 30, 36-37, 83 P.3d 282, 287 (2004) (Maupin, J., concurring).
 

 [25]
 

 See California
 
 v.
 
 Green, 399
 
 U.S. 149, 155-56 (1970);
 
 Crowley,
 
 120 Nev at 37 n.3, 83 P.3d at 287 n.3 (Maupin, J., concurring).
 

 [26]
 

 Crawford,
 
 541 U.S. at 68 (“We leave for another day any effort to spell out a comprehensive definition of ‘testimonial.’ Whatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations.”).
 

 [27]
 

 Id.
 
 at 51-52 (quoting
 
 White
 
 v.
 
 Illinois,
 
 502 U.S. 346, 365 (1992) (Thomas, J., concurring in part and concurring in judgment); Brief for National Association of Criminal Defense Lawyers et al. as Amici Curiae 3).
 

 [28]
 

 Id.
 
 at 52.
 

 [29]
 

 See, e.g., U.S. v. Lopez,
 
 380 F.3d 538, 546-47 n.6 (1st Cir. 2004) (concluding that defendant’s own incriminatory remarks were nontestimonial),
 
 cert. denied,
 
 543 U.S. 1074 (2005);
 
 U.S.
 
 v.
 
 Reyes,
 
 362 F.3d 536, 540
 
 *717
 
 (8th Cir. 2004) (concluding that coconspirator statements made to government agents were nontestimonial),
 
 cert. denied,
 
 542 U.S. 945 (2004);
 
 Dednam v.
 
 State, _ S.W.3d _, _, 2005 WL 23329 (Ark. Jan. 6 , 2005) (concluding that a statement presented to show the basis of a witness’s actions, and not for the truth of the matter asserted within, was nontestimonial);
 
 State
 
 v.
 
 Aguilar,
 
 107 P.3d 377, 377 (Ariz. Ct. App. 2005) (holding that excited utterances heard and testified to by lay witnesses were nontestimonial);
 
 People v. Sisavath,
 
 13 Cal. Rptr. 3d 753, 757 (Ct. App. 2004) (concluding that videotaped testimony of four-year-old victim, taken by forensic interview specialist in presence of government prosecuting and investigating officials after initiation of criminal proceedings, was inadmissible);
 
 State v. Rivera,
 
 844 A.2d 191, 201-02 (Conn. 2004) (holding that declaration against penal interest made to close family member in confidence was nontestimonial);
 
 Demons
 
 v.
 
 State,
 
 595 S.E.2d 76, 79-80 (Ga. 2004) (concluding that statements of murder victim to a friend before murder regarding defendant’s abusive tendencies towards victim were nontestimonial);
 
 State
 
 v.
 
 Ferguson,
 
 607 S.E.2d 526, 528-29 (W. Va. 2004) (concluding that murder victim’s statements made to nonofficial, noninvestigating witnesses that defendant had threatened victim with physical harm prior to murder were nontestimonial because victim made them prior to and apart from any investigation),
 
 cert. denied,
 
 126 S. Ct. 332 (2005).
 

 [30]
 

 Crawford,
 
 541 U.S. at 75 (Rehnquist, C. J., concurring) (citations omitted).
 

 [31]
 

 Friedman,
 
 supra
 
 note 7, at 1041-42.
 

 [32]
 

 See
 
 Akhil Reed Amar,
 
 Confrontation Clause First Principles: A Reply to Professor Friedman,
 
 86 Geo. L.J. 1045, 1045 (1998); Friedman,
 
 supra
 
 note 7, at 1014.
 

 [33]
 

 Needless to say,
 
 Crawford
 
 places in doubt the use of testimonial hearsay statements in criminal cases under NRS 51.325 (former testimony), NRS 51.335 (statements under belief of impending death), NRS 51.345 (statements against interest), NRS 51.095 (excited utterances), and NRS 51.385 (statements by underage children concerning sexual or physical abuse of the child).
 
 See Crawford,
 
 541 U.S. at 56 n.6, 58 n.8. As noted
 
 infra, Crawford
 
 also appears to invalidate our ruling in
 
 Bockting. Crawford
 
 does not appear to affect admissibility of nonaccusatory statements under NRS 51.355 (statements of personal or family history), or nonaccusatory hearsay evidence where the declarant’s availability is irrelevant, to wit: NRS 51.115 (statements made for purposes of medical diagnosis or treatment); NRS 51.125 (recorded recollection); NRS 51.135 (record of regularly conducted activity); NRS 51.145 (absence of entry in records of regularly conducted activity); NRS 51.155 (public records and reports); NRS 51.165 (required reports); NRS 51.175 (absence of public record or entry); NRS 51.185 (records of religious organizations); NRS 51.195 (marriage, baptismal and similar certificates); NRS 51.205 (family records); NRS 51.215 (records of documents affecting interest in property); NRS 51.225 (statements in documents affecting interest in property); NRS 51.235 (ancient documents); NRS 51.245 (market reports; commercial publications); NRS 51.255 (learned treatises); NRS 51.265 (reputation concerning personal or family history); NRS 51.275 (reputation concerning boundaries or general history); NRS 51.285 (reputation as to character); NRS 51.295 (judgments of conviction); NRS 51.305 (judgment as to boundaries or personal, family or general history).
 

 [34]
 

 Crawford,
 
 541 U.S. at 51.
 

 [35]
 

 Id.
 
 at 51-52 (quoting
 
 White,
 
 502 U.S. at 365 (Thomas, J., concurring)).
 

 [36]
 

 Id.
 
 at 52 (quoting Brief for National Association of Criminal Defense Lawyers et al. as Amici Curiae 3) (emphasis added).
 

 [37]
 

 See Griffith,
 
 479 U.S. at 328;
 
 see also Richmond v. State,
 
 118 Nev. 924, 929, 59 P.3d 1249, 1252 (2002).
 

 [38]
 

 Crawford,
 
 541 U.S. at 51 (citations omitted).
 

 [39]
 

 Unavailability under this provision is governed by NRS 51.055.
 

 [40]
 

 See Bockting,
 
 109 Nev. at 111 n.8, 847 P.2d at 1369 n.8 (noting that corroborating evidence may not be considered in assessing the reliability of hearsay statements per
 
 Wright,
 
 497 U.S. at 822);
 
 see also Brown
 
 v.
 
 Uphoff,
 
 381 F.3d 1219, 1225 (10th Cir. 2004) (concluding,
 
 post-Crawford,
 
 that state supreme court acted contrary to clearly established law in relying upon corroboration evidence in its assessment of hearsay statements by codefendant),
 
 cert. denied,
 
 543 U.S. 1079 (2005).
 

 [41]
 

 Wright,
 
 497 U.S. at 826-27.
 

 [42]
 

 735 P.2d 801, 811 (Ariz. 1987).
 

 [43]
 

 We recognize that
 
 Wright
 
 may be somewhat ambiguous in this regard. While the other statements relied upon by the trial court in
 
 Robinson
 
 to assess reliability were otherwise admissible under a hearsay exception for statements made for the purpose of medical treatment, that evidence was certainly corroborative and unrelated to the circumstances under which the subject statement was admitted in that case. Thus, it seems that the Court would allow use of corroborative statements of the declarant in assessing reliability of nontes-timonial statements under
 
 Roberts. See Crawford,
 
 541 U.S. at 68 (“Where nontestimonial hearsay is at issue, it is wholly consistent with the Framers’ design to afford the States flexibility in their development of hearsay law — as does
 
 Roberts,
 
 and as would an approach that exempted such statements from Confrontation Clause scrutiny altogether.”).
 

 [44]
 

 386 U.S. 18, 24 (1967).
 

 [45]
 

 Sullivan
 
 v.
 
 Louisiana,
 
 508 U.S. 275, 279 (1993).
 

 [46]
 

 Turpen v. State,
 
 94 Nev. 576, 577, 583 P.2d 1083, 1084 (1978).
 

 [47]
 

 Wesley
 
 v.
 
 State,
 
 112 Nev. 503, 512,
 
 916
 
 P.2d 793, 799 (1996).
 

 [48]
 

 Leonard v. State, 117
 
 Nev. 53, 63, 17 P.3d 397, 403-04 (2001).
 

 [49]
 

 Prior opportunity to cross-examine satisfies confrontation protection in part.
 
 Crawford,
 
 541 U.S. at 59. Likewise, where the unavailability of the hearsay declarant was procured through the wrongdoing of the accused, confrontation is probably forfeited.
 
 Id.
 
 at 62. Finally, “when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements.”
 
 Id.
 
 at 60 n.9. None of these permutations exist here.
 

 [50]
 

 See Bockting v. Bayer,
 
 399 F.3d 1010, 1012, 1022 (9th Cir. 2005) (granting petitioner’s writ of habeas corpus because petitioner lacked opportunity to cross-examine child victim as required.under new rule stated in
 
 Crawford).
 

 [51]
 

 The Friedman article argues that the witness’s physical availability should not be determinative of whether a statement is testimonial. He offers one qualification to that proposition with certainty, where unavailability is procured through the accused’s wrongdoing. He offers two other possible qualifications: (1) where the prior testimonial statement was made subject to an opportunity to cross-examine under oath, and (2) where the witness is either too reluctant or intimidated to testify. The second possibility arguably provides a method by which child witnesses could testify through surrogates:
 

 The second possible qualification arises if the court believes, given an extremely unlikely prospect of cross-examination being fruitful, that the accused’s invocation of the confrontation right is probably based on the anticipation that the witness would be too intimidated to testify at trial to the full detail of an earlier testimonial statement. Arguably, in such a case, if the witness is available to testify at trial the court should call the accused’s bluff, admitting the prior statement and leaving it to the accused to call the witness to the stand, if he really hopes that confrontation will be helpful. Such a procedure strikes me as plausible, at least when the witness is a child, though I have grave qualms about it.
 

 Friedman,
 
 supra
 
 note 7, at 1038.