NEIL WALLACH, Appellant, v. THE STATE OF
NEVADA, Respondent.

No. 19935

August 1, 1990                          796 P.2d 224

[Rehearing denied August 1, 1990]

*Joseph W. Houston, II,* for Appellant.

*Brian McKay,* Attorney General, Carson City; *Rex Bell,* District Attorney, *Bill Berrett,* Deputy, Clark County, for Respondent.

## OPINION

*Per Curiam:*

This is an appeal from a judgment of conviction, pursuant to a jury trial, of one count each of sexual assault and preventing or dissuading a witness from appearing in court. NRS 200.366; NRS 199.230. The district court sentenced appellant to serve a

term of fifteen years in the Nevada State Prison for the sexual assault and a concurrent term of eight months in the Clark County Detention Center for dissuading a witness from appearing in court.

## FACTS

On March 2, 1987, after an argument with her husband, the victim went to the Vegas Lounge in Las Vegas, Nevada, where she had some drinks and admittedly became intoxicated. While walking home by an indirect route, three strangers stopped to offer her a ride. She refused. Later, appellant drove by in a van used in his cleaning business and offered the victim a ride. The victim testified she accepted appellant's offer because she was tired and her feet had developed blisters. The victim and appellant then picked up appellant's employee, Joe Beck, and dropped Beck off to clean the office of one of appellant's customers.

At trial, the victim claimed the appellant subsequently drove her to a dark, quiet residential street and raped her. She testified that appellant unfastened her pink pants, pulled her pants and panties below her knees, pushed her legs toward her chest and raped her on a ladder in the back of appellant's van. The victim testified her white sweater and bra were on the entire time. At the hospital on the night of the alleged incident, however, the victim told an investigating police detective that the assailant "tore off her clothes." The detective wrote this statement in his police report. The detective added in his police report that "[i]t might be noted that at the time of the interview, the victim's clothes did not look like they'd been ripped off, torn, or anything else." At trial, the victim did not remember telling the detective her clothes had been torn off. Nor did defense counsel attempt to introduce the statement as a prior inconsistent statement when the victim testified. Further, the jury was never apprised of the detective's note in his report about the condition of the victim's clothing.

The evidence at trial established appellant's van was very dirty that evening. Yet, the only evidence the victim's pink pants and white sweater were dirty came from one of the officers who took the victim to the hospital. This officer testified from memory only, nineteen months after the alleged rape. He did not make a police report of the incident. On the other hand, the rape report did not indicate that the victim's clothes were dirty. Appellant maintains these facts support his argument that the victim voluntarily placed her clothes somewhere in the van so they would not get dirty, suggesting that no rape in fact occurred.

In addition, the victim testified at trial that appellant grabbed her and threw her between the front seats into the back of the van. The detective's police report, however, included a different

explanation. At the hospital, the victim told the detective that the suspect "stopped the van, jumped out, ran around and opened the back door to the van, being the sliding side door, forced her into the back, tore off her clothes, and had intercourse with her against her will." This statement was not heard by the jury. The victim denied on the stand that she got in the back of the van through the side door.

Furthermore, the victim gave inconsistent accounts of how she exited the van. At trial, she testified she had been "[thrown] out of [the side door of] the van." But to a passerby who stopped to help her, she stated "some son-of-a bitch had just thrown her out of a van going around the corner." The passerby's testimony was heard at trial. We note that the examining nurse at the hospital did not notice any bruises or abrasions on the victim. The officer who responded to the scene testified that persons who are thrown out of cars normally have scratches and abrasions. He noticed only slight abrasions on her hands. Nothing in the record indicates there were other abrasions or blood on the victim.

In his testimony at trial, appellant denied having sex with the victim. He insisted the victim voluntarily removed her clothes in the back of the van but he refused to have sex with her because she was dirty and had body odor. Specifically, appellant testified the victim looked at him and Joe Beck, and said "[a]re we going out to the desert . . . Yes, I just come from the desert with thirteen Mexicans who raped . . . me." Although the victim denied making this statement, Joe Beck, the witness appellant was convicted of dissuading, partially corroborated appellant's story by testifying he overheard the victim say "[t]ake me out to the desert and rape me." Beck did not take this comment seriously, but thought the victim was joking around. On the stand, the victim denied making this statement. Beck also testified that the victim appeared "tipsy, but not drunk." He further told the jury that, just before appellant and Beck went into the office Beck was going to clean that day, the victim asked appellant (referring to Beck) "[a]re you going to take the cute one with you." Finally, Beck testified appellant never admitted to having sexual intercourse with the victim.

According to appellant's testimony, the victim propositioned him. When she said she wanted money first, the appellant showed her some cash. According to the appellant, the victim then voluntarily went into the back of the van and took off all her clothes. Appellant insists that when he subsequently changed his mind about having sex for the previously stated reasons, the victim got angry and said "[y]ou promised me some money. I wasted my time. I want $200.00 or you are going to be real sorry."

During the trial, little, if any, corroborating evidence of the alleged rape was presented to the jury. For example, test results on the sperm sample taken from the victim's vagina during the rape examination were inconclusive. Both the victim's husband and appellant could have been the source of the semen. The expert who performed the test roughly estimated that the victim had intercourse sometime within the previous twelve to eighteen hours. The victim testified she and her husband had sexual relations approximately twenty-seven to thirty hours before the rape examination at the hospital. Thus, the expert could not rule out "to a scientific certainty" whether the victim's husband had been the source of the semen. Also, the examining nurse at the hospital testified the victim's vagina looked normal, and that aside from the victim's word, nothing in the rape examination report showed she had been raped.

## DISCUSSION

Appellant contends that the district court erred by excluding the statements made to a police detective at the hospital which were contained in the detective's police report. We agree. In Nevada, a statement is hearsay if it is "offered in evidence to prove the truth of the matter asserted . . . ." NRS 51.035. As a general rule, hearsay is inadmissible. NRS 51.065. However, the hearsay rule does not apply if the statement is not offered "to prove the truth of the matter asserted." A statement merely offered to show that the statement was made and the listener was affected by the statement, and which is not offered to show the truth of the matter asserted, is admissible as non-hearsay. *See* NRS 51.035; People v. King, 294 P.2d 972, 974-75 (Cal.Dist.Ct.App. 1956) (hearsay rule did not apply when statement was offered to show probable cause for police officer's search of premises). At the hospital after the victim had calmed down, the victim told the detective that the assailant "tore off her clothes." Consequently, the detective inspected the victim's clothes. When defense counsel asked why the detective had inspected the clothes, the district judge refused to allow the officer to testify about the victim's statement. In our view, the trial judge's refusal to admit the statement into evidence constituted prejudicial error. The statement should have been admitted not to show the truth of the statement, but rather to explain why the detective examined the clothes.

Although this court does not sit as a trier of the facts, we have a

responsibility to insure that the defendant has received a fair trial. The jury was not informed of significant inconsistencies between the victim's in-court testimony regarding the purported rape and her out-of-court account as detailed in the police report. Nor was the jury provided with the detective's observations of the victim's clothes which contradicted the victim's version of events. Factually, this is a close case. We therefore cannot conclude that the error in excluding this crucial evidence was harmless. The result, we regrettably conclude, is a verdict that we are unable to confidently characterize as reliable. Accordingly, we reverse both of appellant's convictions and we remand this case to the district court for a new trial.[1]

[1]In light of our conclusion that the judgment of the district court must be reversed on this basis, we decline to address appellant's contention that his trial attorney was ineffective. In a previous opinion issued by this court, but later withdrawn, we prematurely approached this subject without an adequate basis or record. This case illustrates the prudence of this court's decision in Gibbons v. State, 97 Nev. 520, 634 P.2d 1214 (1981), in which we indicated that the question of ineffective assistance of counsel should not be considered in a direct appeal from a judgment of conviction. Instead, the issue should be raised, in the first instance, in the district court in a petition for post-conviction relief so that an evidentiary record regarding counsel's performance at trial can be created.