131 P.3d 15 (2006)
Albert MEDINA, Appellant,
v.
The STATE of Nevada, Respondent.
No. 43469.
Supreme Court of Nevada.
March 30, 2006.
*17 Philip J. Kohn, Public Defender, and Jeffrey M. Banks, Howard S. Brooks, Scott L. Coffee, and Gary H. Lieberman, Deputy Public Defenders, Clark County, for Appellant.
George Chanos, Attorney General, Carson City; David J. Roger, District Attorney, and Eric G. Jorgensen and James Tufteland, Chief Deputy District Attorneys, Clark County, for Respondent.
Before MAUPIN, GIBBONS and HARDESTY, JJ.

OPINION
HARDESTY, J.
In this appeal, we consider whether an out-of-court statement made by a rape victim a day after the startling event falls within the excited utterance exception to the hearsay rule. Even though the statement was made a day after the rape, we conclude that the mental and physical condition of the victim, coupled with the fact that she remained under the stress of excitement caused by the rape, brings her statement within the excited utterance exception to the hearsay rule.

FACTS
Appellant Albert Medina was staying with a friend in a Las Vegas apartment. The victim in this case, Francine Ryer, lived in the same apartment complex. In May 2002, Ryer and Medina had a conversation about poetry. Ryer told Medina she had a book of poetry at her apartment and the two went to Ryer's apartment so Ryer could share her poetry with him.
Ryer and Medina had different versions of what transpired in Ryer's apartment. Ryer alleged Medina raped her; whereas Medina argued the encounter was consensual. Ryer passed away before Medina's criminal trial began. Consequently, the State had to rely on physical evidence and witnesses who testified to statements Ryer allegedly made.
The focus of this appeal concerns the testimony of Ryer's neighbor, Dorothy Golden. The day after the rape occurred, Golden noticed something unusual; Ryer's porch light was on all day. When Golden couldn't reach Ryer by telephone, she went to Ryer's apartment, knocked on the front door and yelled for Ryer to come out.
After a few knocks, Ryer answered the door in her bra and blood-soaked underwear. Golden testified that when Ryer opened the door, Ryer stated, "Look at me. Look at me. I've been raped." Golden stated that Ryer "had on a bra and panties, and her panties were drenched in blood. And she had cuts on her thighs, and her hair was all over her head. And she just looked like a ghost. She just looked horrified." Golden further testified that Ryer was crying, appeared pale and shaken, and that she had bruises on her arms and throat.
Medina objected to the prosecution's use of this testimony in pretrial motions. The district court allowed the prosecution to introduce Ryer's statement to Golden that she had been raped under the excited utterance exception to the hearsay rule.
In addition to Golden's testimony, the prosecution presented testimony of Marian Adams. Adams is a Sexual Assault Nurse Examiner (SANE nurse) for the University Medical Center. SANE nurses are funded *18 by the State of Nevada Department of Social Services and are trained to conduct sexual assault examinations. A particular duty of a SANE nurse is to gather evidence for possible criminal prosecution in cases of alleged sexual assault. SANE nurses do not provide medical treatment. They only examine the individual to get vital signs and a history from the victim.
During Adams' testimony, the prosecution asked her to state what Ryer had told her about the rape. Medina objected to the testimony as violating his right to confront and cross-examine the witness against him, but the district court overruled the objection and allowed the testimony.
The jury found Medina guilty of five counts of sexual assault of a victim 65 years or older, one count of first-degree kidnapping of a victim 65 years or older, and one count of failure to change address by a convicted sex offender.

DISCUSSION
Medina argues that the district court erroneously admitted portions of Golden's and Adams' testimony. Medina contends that when this evidence is stricken, there is insufficient evidence to support his conviction for sexual assault. We disagree.
First, Ryer's statement to Golden that she was raped is admissible as an excited utterance because the statement was made while under the excitement of the rape. Second, Golden's testimony did not violate the Confrontation Clause because the statement was not testimonial.[1] Adams' testimony, however, is testimonial because the circumstances under which Ryer made the statements to Adams would lead an objective witness to reasonably believe that the statements would be available for use at a later trial. Nevertheless, we conclude that the admission of Adams' testimony was harmless beyond a reasonable doubt.[2] Accordingly, we affirm Medina's conviction.

Ryer's statement to Golden that she was raped qualifies as an excited utterance
Medina argues that the district court abused its discretion when it admitted statements made by Ryer to Golden pursuant to the excited utterance exception found in NRS 51.095. Medina contends that Ryer had sufficient time to reflect on the alleged rape and, thus, her statement to Golden did not qualify as an excited utterance.
A trial court's decision to admit evidence will not be reversed on appeal unless it is manifestly erroneous.[3] As a general rule, hearsay statements are inadmissible.[4] A statement is hearsay if it is "offered in evidence to prove the truth of the matter asserted."[5] Hearsay is inadmissible unless it falls within one of the exceptions to the general rule.[6] One such exception is an excited utterance.[7] An excited utterance is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."[8]
We take this opportunity to clarify our jurisprudence concerning the excited utterance exception. In Browne v. State, we concluded that the district court erred when it admitted statements made by the victim pursuant to the excited utterance exception.[9] This court stated that the victim was upset, excited and frightened when she told her father she was afraid her husband was going to kill her.[10] However, the Browne court found that the statements were not excited *19 utterances because the record did not indicate when the event that caused the victim's fear occurred.[11] The court explained that "as timing is often the determining factor for an excited utterance, these statements cannot fall into this exception."[12]
We now clarify Browne to the extent it suggests that time alone governs the excited utterance analysis. The proper focus of the excited utterance inquiry is whether the declarant made the statement while under the stress of the startling event. The elapsed time between the event and the statement is a factor to be considered but only to aid in determining whether the declarant was under the stress of the startling event when he or she made the statement.
NRS 51.095 does not limit the statute's application to those statements made shortly after a startling event. Instead, NRS 51.095 states that an excited utterance is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." While the time elapsed between the startling event and the statement is an important factor, the absence of an express time requirement in the statute demonstrates that the Legislature did not intend to limit the statute's application to those statements made within a specified time after a startling event.[13] The Legislature's only limit to the statute's application is that the statement is made while the declarant is still under the stress of excitement caused by the event. Therefore, district courts must examine all of the facts and circumstances surrounding a statement in addition to the time elapsed from the startling event.
The district court found that Ryer was still under the stress of excitement caused by the rape when she informed Golden that Medina had raped her. Ryer was a stroke victim who walked with a limp and had difficulty speaking clearly. Golden testified that when Ryer opened the door, Ryer stated, "Look at me. Look at me. I've been raped." Golden then proceeded into the apartment where Ryer told her about the rape:
And all of the sudden, [Medina] just jumped up and caught [Ryer] from behind, just caught her hair and wound her hair in his hand and drug her to the bedroom in the bed and raped her repeatedly, repeatedly.
[Ryer] said [Medina] just did her like she was a rag doll. She said he went from her vagina to her mouth and to her rectum, and he just went backward and forth. And he choked her, and she said she was begging for him, "I can't [breathe]. I can't [breathe]."
[Ryer] said [Medina] would give her a little bit of air, and then he would start back to choking her. And that went on and on.
And then [Ryer] said finally [Medina] drug her to the bathroom and tried to make her take a shower, and she wouldn't. And he held her by her good hand, her left hand, and he got in the shower, and he bathed.
Golden testified that Ryer "had on a bra and panties, and her panties were drenched in blood. And she had cuts on her thighs, and her hair was all over her head. And she just looked like a ghost. She just looked horrified." Golden further testified that Ryer was crying, appeared pale and shaken, and had bruises on her arms and throat. Ryer had not changed out of her blood-soaked undergarments or attempted to seek help from emergency services. Ryer was physically and mentally incapable of seeking help because she continued to suffer from the trauma of the rape after the rape occurred. However, the moment Golden arrived, Ryer immediately exclaimed to her that she had been raped and how the rape occurred. In essence, Ryer's excitement was uttered in response to the appearance of Golden, a rescuer. Thus, under the particular facts of this case, Ryer made the statement while still under the stress of excitement caused by the rape. Accordingly, the district court did not manifestly err when it admitted Golden's testimony *20 under the excited utterance exception.

Golden's testimony did not violate the Confrontation Clause, but Adams' testimony did
Medina argues that Ryer's statements to Golden and Adams about the rape violated the Confrontation Clause. We disagree that Golden's testimony resulted in a Confrontation Clause violation, but we agree that Adams' testimony did. However, we conclude that the admission of Adams' testimony was harmless and does not warrant a reversal of Medina's conviction.
A trial court's evaluation of admissibility of evidence will not be reversed on appeal unless it is manifestly erroneous.[14]Crawford v. Washington holds that the Confrontation Clause bars the use of a testimonial statement made by a witness who is unavailable for trial unless the defendant had an opportunity to previously cross-examine the witness regarding the witness's statement.[15]
In Crawford, the United States Supreme Court did not define "testimonial" for purposes of the Confrontation Clause analysis, but it did give examples of what would qualify as testimonial.[16] The Court listed "affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially" as the "core class" of testimonial statements.[17]
Even though the United States Supreme Court has not provided a comprehensive definition of "testimonial," this court recently has. In Flores v. State, we concluded that a statement is testimonial if it "`would lead an objective witness'" to reasonably believe "`that the statement would be available for use at a later trial.'"[18]
Golden's hearsay testimony that Ryer told her she had been raped did not violate the Confrontation Clause because Ryer's statement was not testimonial under Crawford or Flores. First, the statement was not in the form of an affidavit, was not made during a custodial examination, and was not prior testimony that Medina was unable to cross-examine Ryer on.
Additionally, Ryer's statement was not one that Ryer would reasonably expect to be used prosecutorially because Ryer made the statement to a neighbor and had yet to contact the police or emergency services herself. Under these circumstances, it cannot be said that Ryer reasonably expected her statement to Golden to be used in the prosecution of Medina.
The same conclusion cannot be drawn from Adams' testimony. During trial, Adams testified as to what Ryer told her about the rape during the sexual assault examination. Adams testified that Ryer stated that "she was choked, that she was hit, that [Medina] put his penis into her mouth, into her vagina, he put his penis into her rectum. [Ryer] stated that [Medina] put his mouth on her vagina and then he put his penis in her mouth." In Flores, this court held that the witnesses' hearsay testimony violated the Confrontation Clause because the witnesses were either police operatives or were tasked with reporting instances of child abuse for the prosecution.[19] Here, Adams was a police operative. She testified that she is a "forensics nurse" and that she gathers evidence for the prosecution for possible use in later prosecutions. As such, the circumstances under which Ryer made the statements to Adams would lead an objective witness to reasonably believe that the statements would be available for use at a later trial. Ryer was not available for trial, and Medina had no prior opportunity to cross-examine her regarding the statements to Adams. Therefore, the district court manifestly *21 erred when it admitted the statements Ryer made to Adams during the sexual assault examination.

The admission of Adams' testimony, although error, was harmless
"Confrontation clause errors are subject to ... harmless error analysis."[20] The United States Supreme Court has explained that "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt."[21] Under this standard, reversal is not required "if the State could show `beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'"[22] When reviewing Confrontation Clause errors under the harmless error standard, the United States Supreme Court has identified "a host" of relevant factors. "These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points,... and, of course, the overall strength of the prosecution's case."[23]
After viewing the evidence in the record before us and considering the above factors, we conclude that the admission of Adams' testimony concerning Ryer's statements about the rape was harmless beyond a reasonable doubt because the jury's verdict was unattributable to the error.
Adams' testimony was cumulative; her testimony did not add any material fact that the prosecution had not already presented. Specifically, Golden's testimony also provided the prosecution with evidence that Medina had raped Ryer. Additionally, the prosecution presented corroborating physical evidence proving that Medina had been in the apartment, that Ryer had been sexually assaulted, and that Ryer was bruised and battered. Given the overall strength of the prosecution's case and the cumulative nature of Adams' testimony, we conclude beyond a reasonable doubt that the erroneous admission of Adams' testimony was harmless because it did not contribute to the verdict obtained.

CONCLUSION
First, Ryer's statement to Golden that she was raped qualifies as an excited utterance and, thus, the district court did not manifestly err when it admitted the testimony. Second, Golden's testimony did not violate the Confrontation Clause. However, Adams' testimony did because it was testimonial under Flores and Medina had no opportunity to cross-examine Ryer regarding the statements to Adams. Nevertheless, we conclude that the admission of Adams' testimony was harmless beyond a reasonable doubt. Accordingly, we affirm Medina's conviction.
MAUPIN and GIBBONS, JJ., concur.
NOTES
[1] See Crawford v. Washington, 541 U.S. 36, 68, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004); Flores v. State, 121 Nev. ___, ___, 120 P.3d 1170, 1178-79 (2005).
[2] Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).
[3] Lucas v. State, 96 Nev. 428, 431-32, 610 P.2d 727, 730 (1980).
[4] NRS 51.065.
[5] NRS 51.035.
[6] NRS 51.065.
[7] NRS 51.095.
[8] Id.
[9] 113 Nev. 305, 313, 933 P.2d 187, 192 (1997).
[10] Id.
[11] Id.
[12] Id.
[13] White v. Warden, 96 Nev. 634, 636, 614 P.2d 536, 537 (1980) (holding that if a statute is clear on its face, the court cannot go beyond the statute in determining legislative intent).
[14] Lucas, 96 Nev. at 431-32, 610 P.2d at 730.
[15] 541 U.S. 36, 68, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).
[16] Id. at 52, 124 S.Ct. 1354.
[17] Id. at 51, 124 S.Ct. 1354.
[18] 121 Nev. ___, ___, 120 P.3d 1170, 1178-79 (2005) (quoting Crawford, 541 U.S. at 52, 124 S.Ct. 1354).
[19] Id. at ___, 120 P.3d at 1180.
[20] Power v. State, 102 Nev. 381, 384, 724 P.2d 211, 213 (1986); accord Coy v. Iowa, 487 U.S. 1012, 1021, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988).
[21] Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).
[22] Sullivan v. Louisiana, 508 U.S. 275, 279, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993) (quoting Chapman, 386 U.S. at 24, 87 S.Ct. 824); accord Flores, 121 Nev. at ___, 120 P.3d at 1180.
[23] Delaware v. Van Arsdall, 475 U.S. 673, 684, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986).