An unpublished order shall not be regarded as precedent and shall not be cited as legal authority. SCR 123

# IN THE SUPREME COURT OF THE STATE OF NEVADA

ANGEL ALBERT SANTANA,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 65514

**FILED**

MAY 18 2015

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

## *ORDER OF REVERSAL AND REMAND*

This is an appeal from a judgment of conviction, pursuant to a jury verdict, of second-degree murder with the use of a deadly weapon, two counts of attempted murder with the use of a deadly weapon, and two counts of assault with a deadly weapon. Eighth Judicial District Court, Clark County; James M. Bixler, Judge.

Appellant Angel Albert Santana argues that the district court abused its discretion by admitting hearsay testimony and violating the Confrontation Clause.[1] Santana argues that Detective Larry Hanna's testimony regarding statements made by non-testifying witness Anthony Joyner, who told Hanna that he recognized Santana at the scene and described his neck tattoo, was hearsay and a Confrontation-Clause violation and therefore should not have been admitted at trial.

Detective Hanna testified that, based on the conversation with Joyner, he was looking for an individual with "a tattoo of red lips on the

---

[1]Because we are reversing and remanding for a new trial, we need not address Santana's claims of error with respect to the district court's decision to compel him to display his tattoo or its instructing the jury on flight.

15-15083

neck." Defense counsel objected on hearsay and Sixth Amendment grounds. The State asserted that Hanna's testimony regarding his conversation with Joyner was admissible to show the course of the investigation and was not offered for the truth of the matter asserted, contending that the testimony merely showed how the detective was affected by statements and explained his actions during the course of his investigation. The district court agreed.

An out-of-court statement offered to prove the truth of the matter asserted is hearsay and is inadmissible where an exception does not apply. NRS 51.035; NRS 51.065; *Ramirez v. State*, 114 Nev. 550, 558, 958 P.2d 724, 729 (1998). Additionally, if hearsay is "testimonial," as when it is "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial," the Confrontation Clause prohibits its admission at trial unless the declarant is unavailable and the defendant has had a prior opportunity to cross-examine the declarant. *Crawford v. Washington*, 541 U.S. 36, 52, 59 (2004) (internal quotation marks omitted). While testimony offered to show the course of an investigation that is not offered to show the truth of the matter asserted may be admitted as non-hearsay, *Wallach v. State*, 106 Nev. 470, 473, 796 P.2d 224, 227 (1990), evidence that only serves to identify the defendant as the guilty party violates the Confrontation Clause and cannot be admitted as course-of-investigation testimony, *Taylor v. Cain*, 545 F.3d 327, 335 (5th Cir. 2008).

Joyner's statements to Hanna were clearly testimonial because a reasonable observer would anticipate that the statements to a police detective in the context of a murder investigation could be used in a later trial. *See Crawford*, 541 U.S. at 52. Especially when considered in

light of the State's opening statement that described how Joyner identified Santana as the gunman and described this particular tattoo and the district court's having Santana display his tattoo shortly after this line of questioning, Hanna's testimony served principally to prove the truth of the matter asserted, that the gunman had this particular neck tattoo and that Santana was guilty of the crimes charged because the tattoo identifies him as the guilty party. The record shows that Santana was already a suspect when Hanna interviewed Joyner and does not show investigative steps taken as a result of the tattoo evidence. Thus, the course-of-investigation exception did not apply, *see Taylor*, 545 F.3d at 335, and the testimony restating Joyner's statement was impermissible hearsay, *see Wallach*, 106 Nev. at 473, 796 P.2d at 227. Hanna need not have directly quoted Joyner, as the jury could readily infer the substance of Joyner's statement. *See Ocampo v. Vail*, 649 F.3d 1098, 1111 (9th Cir. 2011) (holding that the Confrontation Clause applies to an out-of-court statement when the jury is likely to infer its substance); *United States v. Silva*, 380 F.3d 1018, 1020 (7th Cir. 2004) ("Under the prosecution's theory, every time a person says to the police 'X committed the crime,' the statement (including all corroborating details) would be admissible to show why the police investigated X. That would eviscerate the constitutional right to confront and cross-examine one's accusers."). Thus, the district court erred in admitting testimony that was impermissible hearsay and violated the Confrontation Clause. *See Chavez v. State*, 125 Nev. 328, 339, 213 P.3d 476, 484 (2009) (reviewing Confrontation Clause violations de novo and evidentiary rulings for an abuse of discretion).

Confrontation Clause errors are reviewed for harmless error. *Medina v. State*, 122 Nev. 346, 355, 143 P.3d 471, 476 (2006). To hold a

federal constitutional error harmless, the court must be able to conclude that it was harmless beyond a reasonable doubt by determining beyond a reasonable doubt that the error did not contribute to the verdict. *Id.* at 355, 143 P.3d at 477 (citing *Chapman v. California*, 386 U.S. 18, 24 (1967), and *Sullivan v. Louisiana*, 508 U.S. 275, 279 (1993)). When reviewing Confrontation Clause errors for harmless error, the United States Supreme Court has identified several relevant factors, including the importance of the testimony to the State's case, whether the testimony was cumulative, whether other evidence corroborated the witness's testimony, and the overall strength of the State's case. *Id.*

While Santana made incriminatory statements during a police interview, he also made numerous assertions that are most likely false, such that the jury was required to distinguish the credible from the incredible. Santana stated that he owned a gun of the same caliber as that used in the shooting, that he got his gun and chased a group of people who should not live, that he was angry unlike ever before, that he shot at a group of people including those who had disrespected his family, that "I know I got two black males," that he went to Mexico because he was unsure whether he would be able "to smell the air again," and that he did not want to spend the rest of his life in prison. Santana, however, made other statements that place the credibility of the above statements into question, such as that he fought off and pursued three men who broke into his brother's apartment and that he was being pursued by an international gang where no evidence supports the existence of the break-in, the fight, or the gang. He asserted that he used a gun of a different caliber than that used in the crime, that he had no recollection of encountering the paramedics, and that the gun was stolen from his car,

which was also stolen. Santana also asked the interrogating officers to "put him to sleep once and for all." The credibility of the only witness who identified Santana as the perpetrator is suspect, as she recognized only his eyes but not his hair or facial hair, conflicted with her grand jury testimony, was drinking on the day of the shooting, admitted to drinking vodka on the morning of her testimony, and noted that she regularly takes the prescription medications Depakote, Adderall, and Klonopin. No other witness identified Santana as the perpetrator or provided more than a general physical description. No physical evidence connected Santana to the crime scene. Connecting Santana's presence to the crime scene by eyewitness evidence that the perpetrator bore the same tattoo as Santana thus provided vital extrinsic corroboration of Santana's confession that rebutted the defense arguments against the confession's credibility by identifying him as the culprit. *See Williams v. State*, 544 N.E.2d 161, 163 (Ind. 1989). No independent evidence corroborates the substantive evidence adduced by the impermissible testimony. *See Blount v. State*, 22 N.E.3d 559, 568 (Ind. 2014). The prejudice caused by this error is magnified by the State's opening statement that Joyner recognized the gunman as Santana and saw a tattoo of red lips on the gunman. While the evidence the State adduced at trial—excluding the impermissible portion of Hanna's testimony—may have been sufficient to support the convictions, *see Origel-Candido v. State*, 114 Nev. 378, 381, 956 P.2d 1378, 1380 (1998), it was not overwhelming, *see Hernandez v. State*, 124 Nev. 639, 653, 188 P.3d 1126, 1136 (2008); *Taylor*, 545 F.3d at 336-37. We therefore cannot conclude, beyond a reasonable doubt, that Hanna's testimony regarding Joyner's statement did not contribute to Santana's conviction. Therefore, we ORDER the judgment of the district court

REVERSED AND REMAND this matter to the district court for proceedings consistent with this order.

                                            , J.
Saitta

                                            , J.
Gibbons

                                            , J.
Pickering

cc:    Chief Judge, Eighth Judicial District
       Justice Law Center
       Attorney General/Carson City
       Clark County District Attorney
       Eighth District Court Clerk