# IN THE SUPREME COURT OF THE STATE OF NEVADA

PAUL MATHEW REVELL,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 67654

FILED

MAY 2 5 2017

CLERK OF PF... COURT

BY
DEPUTY CLERK

## *ORDER OF AFFIRMANCE*

This is an appeal from a judgment of conviction, pursuant to a jury verdict, of first-degree murder. Second Judicial District Court, Washoe County; Jerome M. Polaha, Judge.

## *FACTS AND PROCEDURAL HISTORY*

The State charged Paul Revell with first-degree murder in the death of his four-month-old child, Skye. Before trial, the State sought genetic testing for evidence of three diseases in anticipation of Revell's theory that Skye had died from natural causes. Transgenomic, a genetic testing company, tested for cardiomyopathy and cardiac channelopathy. The University of Alabama tested for tuberous sclerosis.

The State filed a motion in limine to admit the genetic testing reports through one specified employee from each laboratory. For the Transgenomic reports, the State sought to introduce testimony from Dr. Patricia Murphy, a laboratory supervisor who did not participate in the testing but had evaluated and certified the results. Revell opposed the motion, arguing that he had, pursuant to the Confrontation Clause, a right to cross-examine the laboratory analysts and technicians regarding their testing. The district court concluded that the genetic testing reports were not testimonial and granted the State's motion.

17-17589

The case proceeded to trial. The State did not admit the genetic testing reports but used the reports as demonstrative evidence. Over Revell's objection, Dr. Murphy testified. Dr. Murphy indicated that her role as a laboratory supervisor allowed her to "detect anything that is going wrong with the lab procedure as it's being done," and she testified that the testing was accurate and Skye did not possess the genetic mutations for cardiomyopathy or channelopathy. None of Revell's witnesses testified that Skye died from either cardiomyopathy or channelopathy, and one of Revell's expert witnesses testified that the genetic tests were looking for something that "ha[d] nothing to do with this case." During the State's case, three doctors, including medical examiner Dr. Bennet Omalu, testified that Skye's injuries were the result of non-accidental head trauma from child abuse. In addition, one doctor testified that Skye's injuries were caused by trauma generally. The State again called Dr. Omalu in rebuttal. Dr. Omalu testified that there was no evidence that Skye died as a result of the tested diseases. The jury convicted Revell of first-degree murder, and Revell was sentenced to a term of life imprisonment with the possibility of parole after 20 years.

## DISCUSSION

*Any error in allowing Dr. Murphy's testimony about the genetic reports was harmless.*

Revell argues that Dr. Murphy's testimony violated the Confrontation Clause,[1] and that any error in admitting Dr. Murphy's

---

[1]Revell's confrontation claim solely focuses on the Transgenomic testing and Dr. Murphy's testimony, as Revell acknowledges that a doctor who performed the tuberous sclerosis testing at the University of Alabama testified at trial.

testimony was not harmless, especially in light of Dr. Omalu's testimony. We do not reach the issue of whether the testimony violated the Confrontation Clause because we conclude that any error was harmless.

"Confrontation [C]lause errors are subject to . . . harmless error analysis." *Medina v. State*, 122 Nev. 346, 355, 143 P.3d 471, 476 (2006) (internal quotations omitted). "[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Id.* at 355, 143 P.3d at 477 (internal quotations omitted). Reversal is not warranted "if the State could show beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Id.* (internal quotations omitted). Relevant factors in this analysis "include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, . . . and, of course, the overall strength of the prosecution's case." *Id.* (internal quotations omitted).

In this case, three doctors, including Dr. Omalu, provided evidence that Skye's injuries were a result of non-accidental trauma. In addition, one doctor testified that the injuries were a result of trauma generally. Evidence that Skye did not die from channelopathy or cardiomyopathy, the subjects of Dr. Murphy's testimony, was unnecessary for a determination of guilt given the ample evidence presented against Revell as to an unrelated cause of death. Moreover, Dr. Omalu's testimony in this regard "did not add any material fact that the prosecution had not already presented" and was therefore cumulative. *See Medina*, 122 Nev. at 346, 143 P.3d at 477. Finally, Dr. Murphy testified

that she was responsible for the accuracy of testing results and could "detect anything that is going wrong with the lab procedure as it's being done," and she was therefore capable of testifying as to quality assurance. Given the unrelated nature of the genetic mutations to Skye's cause of death, the absence of evidence on contradicting Dr. Murphy's testimony, the cumulative nature of Dr. Omalu's testimony, and the overall strength of the prosecution's case, we conclude that the State has shown beyond a reasonable doubt that any error in admitting Dr. Murphy's testimony did not contribute to the verdict obtained. Accordingly, we

ORDER the judgment of the district court AFFIRMED.

_____, J.
Hardesty

_____, J.
Parraguirre

_____, J.
Stiglich

cc:    Hon. Jerome M. Polaha, District Judge
       Washoe County Public Defender
       Washoe County District Attorney
       Attorney General/Carson City
       Washoe District Court Clerk