IN THE SUPREME COURT OF THE STATE OF NEVADA

KEVIN PHILLIP RASPPERRY,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 83894

FILED

NOV 16 2022

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY
DEPUTY CLERK

*ORDER OF AFFIRMANCE*

This is an appeal from a judgment of conviction, pursuant to a jury verdict, of four counts of driving under the influence resulting in death or great bodily harm, four counts of reckless driving causing death or great bodily harm, one count of felony driving under the influence, and two counts of possession of a controlled substance. Eighth Judicial District Court, Clark County; Tierra Danielle Jones, Judge. Appellant Kevin Phillip Raspperry raises nine contentions on appeal.[1]

First, appellant argues that his speedy trial rights were violated. We disagree. As to the statutory right to a speedy trial under NRS 178.556, there was good cause for the nearly 22-month delay. *See Huebner v. State*, 103 Nev. 29, 31, 731 P.2d 1330, 1332 (1987) (stating that dismissal is mandatory under NRS 178.556 only if no good cause is shown for the delay). In particular, the delay in bringing appellant to trial was attributable to motion practice, the COVID-19 pandemic, and accommodating the district court's calendar. As to the constitutional right to a speedy trial, the delay between arraignment and trial was sufficient to trigger a speedy-trial analysis, *State v. Inzunza*, 135 Nev. 513, 516-17, 454

---

[1]Pursuant to NRAP 34(f)(1), we have determined that oral argument is not warranted in this appeal.

22-36086

P.3d 727, 731 (2019) (holding that a delay approaching one year is sufficient to trigger constitutional speedy-trial analysis), but the relevant factors weigh against a violation. *See Barker v. Wingo*, 407 U.S. 514, 530 (1972) (identifying the factors to be balanced in deciding whether the right to a speedy trial has been violated). The reasons for the delay were valid and appropriate. Appellant litigated a motion to dismiss which was denied, then waived his speedy trial rights, and then agreed upon delays for this court to resolve pending cases relevant to that motion, and the remainder of the delay was compelled by the district court's calendar and other pandemic related delays. *See id.* at 531 (explaining that deliberate attempts to delay the trial by the State should weigh against the government, neutral factors like negligence or overcrowded courts should be weighted less heavily, and valid reasons may justify appropriate delay); *cf. United States v. Olsen*, 21 F.4th 1036, 1047 (9th Cir. 2022) (holding that "a global pandemic that has claimed more than half a million lives in this country . . . falls within such unique circumstances to permit a court to temporarily suspend jury trials in the interest of public health"); *United States v. Smith,* 460 F. Supp. 3d 981, 984 (E.D. Cal. 2020) ("Almost every court faced with the question of whether general COVID-19 considerations justify an ends-of-justice continuance and exclusion of time [from speedy-trial considerations] has arrived at the same answer: yes."). And appellant has not demonstrated prejudice. *See Barker*, 407 U.S. at 532 (explaining that prejudice "should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect"). Appellant asserted that he faced a more aggressive prosecution due to the severity of the murder charge and suffered anxiety due to the length of the delay and severity of the murder charge. The record does not indicate that the prosecution assignment track

prejudiced appellant. While the anxiety to the accused is a harm that the speedy trial right was designed to guard against, *see Inzunza*, 135 Nev. at 518, 454 P.3d at 732, as so much of the delay was a consequence of appellant's motion to dismiss the murder charge, we conclude that appellant has not demonstrated a violation of his constitutional right to a speedy trial.

Second, appellant argues that there was insufficient evidence adduced at trial to show that he was driving the car that collided with the victim's vehicles. He also argues that there was inadequate proof that he possessed the controlled substances in the backpack in the car.

Viewing the evidence in the light most favorable to the prosecution, we conclude that a "rational trier of fact could have found the essential elements of the crime[s] beyond a reasonable doubt." *McNair v. State*, 108 Nev. 53, 56, 825 P.2d 571, 573 (1992) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *see Bolden v. State*, 97 Nev. 71, 73, 624 P.2d 20, 20 (1981) (holding that a jury's verdict will not be disturbed on appeal where substantial evidence supports it). Witnesses testified that a gray Toyota Avalon, registered to appellant's mother, careened through a red light at roughly 100 miles per hour. The Avalon struck an SUV in the intersection, causing the SUV to strike another car and a bus. The heavily damaged Avalon came to rest over 200 feet away from the collision. A medical technician testified that he extricated appellant from the driver's seat of the Avalon and saw no one else in the car. A responding officer also observed appellant being removed from the driver's side of the vehicle. Witnesses also testified that a backpack with containers of MDMA and methamphetamine was recovered from the Avalon. Testing showed appellant's blood alcohol content was .205 percent under two hours after the



collision and revealed the presence of MDMA and marijuana. Based on this evidence, a rational juror could conclude beyond a reasonable doubt that appellant was impaired, drove recklessly through the intersection, and caused multiple collisions resulting in great bodily harm and death while in possession of controlled substances. *See* NRS 484C.110(1)(c) (driving under the influence); NRS 484C.430(1) (driving under the influence causing death or substantially bodily harm); NRS 484B.653(1) (reckless driving); NRS 453.336 (possession of a controlled substance).

Third, appellant argues that the district court erred in admitting blood alcohol evidence without an adequate foundation and chain of custody, pointing to a mistake in the documentation. We discern no abuse of discretion. *See Mclellan v. State,* 124 Nev. 263, 267, 182 P.3d 106, 109 (2008). The State established a chain of custody through the testimony of the officer who documented the blood draw and the phlebotomist who performed the blood draws. Nothing in the record suggests that the blood samples were not those obtained from appellant or that any discrepancy in the chain of custody rendered it unsound. *See Sorce v. State,* 88 Nev. 350, 352-53, 497 P.2d 902, 903 (1972). Although the documentation had errors in that the time of the blood draws was written into the "incident time" box on the form, testimony established that the samples shared the same event number as the police report for the collision investigation. Thus, any discrepancies in the documentation went to the weight of the evidence, not its admissibility. *See Hughes v. State,* 116 Nev. 975, 981, 12 P.3d 948, 952 (2000).

Fourth, appellant contends that the testimony of a witness through a teleconferencing application violated his right to confrontation,

Supreme Court
of
Nevada

(O) 1947A

4

and the district court failed to make sufficient findings that it was necessary. We agree.

Courts may permit witnesses to appear by simultaneous audiovisual transmission at trial provided that such a presentation "is necessary to further an important public policy and only where the reliability of the testimony is otherwise assured." *Lipsitz v. State*, 135 Nev. 131, 136, 442 P.3d 138, 143 (2019) (applying the standard in *Maryland v. Craig*, 497 U.S. 836 (1990), to two-way audiovisual communication); *see* SCR Part IX-A(B) Rule 2. Simultaneous audiovisual transmission of testimony may "be used only after the trial court hears evidence and makes a case-specific finding that the procedure is necessary to further an important state interest." *Lipsitz*, 135 Nev. at 136-37, 442 P.3d at 143. Here, the district court noted that administrative orders related to the COVID-19 pandemic authorized teleconferenced testimony and that the method of transmission permitted the jury to see the witness and the defense to cross-examine him, ensuring reliability. *See Craig*, 497 U.S. at 845-46. However, the district court did not make the required case-specific findings that the witness who testified via audiovisual transmission was especially vulnerable to COVID-19 and therefore needed the accommodation. *See Lipsitz*, 135 Nev. at 136-37, 442 P.3d at 143.

Although the State has not argued that any error in this respect was harmless, we conclude that our sua sponte review for harmlessness is appropriate here.[2] *See Belcher v. State*, 136 Nev. 261, 268, 464 P.3d 1013,

---

[2]The State's argument that "[a]ppellant fails to explain who his defense was in any way prejudiced by the use of live audio-visual transmission[,]" does not meet its burden of proving that any error was harmless beyond a reasonable doubt. *See Medina*, 122 Nev. at 355, 143 P.3d at 477.

1024 (2020) (providing that where the State fails to argue that error is harmless, this court may still determine that an error was harmless after considering the following factors: "(1) the length and complexity of the record, (2) whether the harmlessness of an error is certain or debatable, and (3) the futility and costliness of reversal and further litigation."); *Medina v. State*, 122 Nev. 346, 355, 143 P.3d 471, 477 (2006) (concluding that when State can show beyond a reasonable doubt that Confrontation Clause error did not contribute to the verdict, reversal is unnecessary); *see also Chapman v. California*, 386 U.S. 18, 23-24 (1967) (adopting harmless error standard). The record in this case, which has only three days of testimony about the cause of a traffic collision, is not voluminous or complex. The harmlessness of the error is not debatable given that other witnesses provided similar testimony as the challenged witness—that they saw appellant in or being removed from the Avalon following the collision—and other evidence linked appellant to the Avalon—namely, the vehicle registration in his mother's name. *See Medina*, 122 Nev. at 355, 143 P.3d at 477 (recognizing that court may consider the extent to which testimony is cumulative of other evidence and strength of the State's case in determining whether its admission was harmless). Because we are confident that a rational jury would have found appellant guilty without the remote testimony, it would be futile to reverse and remand because another trial would reach the same result. *See Brooks*, 772 F.3d at 1172 (concluding that remand for retrial would be futile where there is overwhelming evidence of guilt). Accordingly, we conclude that the confrontation error due to the remote testimony was harmless beyond a reasonable doubt.

Fifth, appellant contends that the district court erred in admitting evidence of uncharged conduct. He asserts testimony that the

vehicle control module did not record the charged event because it was full of data implied that he had caused other collisions. We discern no plain error. *See Green v. State*, 119 Nev. 542, 545, 80 P.3d 93, 94-95 (2003) (reviewing unobjected-to error for plain error affecting substantial rights). The reference to the module being full was not an unmistakable reference to appellant's prior bad acts as the record indicates that the car appellant was driving was registered to his mother. *See Patterson v. State*, 111 Nev. 1525, 1530, 907 P.2d 984, 987 (1995) ("An error is plain if the error is so unmistakable that it reveals itself by a casual inspection of the record." (internal quotation marks omitted)). Further, data about the event was retrieved from one of the victim's cars, which indicates that the data filling the module on appellant's vehicle may have included all events involving that car regardless of who was at fault. Additionally, appellant did not demonstrate substantial prejudice given the overwhelming evidence of guilt.

Sixth, appellant contends that the district court erred in not inquiring into juror bias when a juror informed the court that he knew a witness during a break in that witness's testimony. After being informed of the juror's statement, counsel for appellant acquiesced to the court's plan to question the juror but then did not object when the court failed to do so after it reconvened. We conclude that appellant failed to demonstrate plain error affecting his substantial rights. *See Green*, 119 Nev. at 545, 80 P.3d at 94-95; *cf., Daly v. State*, 99 Nev. 564, 568, 665 P.2d 798, 801 (1983) (recognizing that a contemporaneous objection is necessary to preserve error related to a court's failure to enforce an earlier ruling); *McCall v. State*, 97 Nev. 514, 516, 634 P.2d 1210, 1211 (1981) (recognizing that the failure to object to an unqualified juror when grounds for disqualification are known constitutes

SUPREME COURT
OF
NEVADA

(O) 1947A

7

waiver). The failure to inquire into potential bias constituted error that was plain from a casual inspection of the record. *See Sanders v. Sears-Page*, 131 Nev. 500, 507, 354 P.3d 201, 206 (Ct. App. 2015) (recognizing trial court's duty to question jurors when information suggesting actual bias arises). However, appellant did not establish prejudice–i.e., that a biased juror served on his jury. *See Preciado v. State*, 130 Nev. 40, 44, 318 P.3d 176, 178 (2014) ("A district court's erroneous denial of a challenge for cause is reversible error only if it results in an unfair empaneled jury."); *Blake v. State*, 121 Nev. 779, 796, 121 P.3d 567, 578 (2005) (concluding that appellant not denied right to impartial jury so long as "the jury actually seated [was] impartial"). The juror's mere acquaintance with the witness did not establish actual or implied bias. *See United States v. Bradshaw*, 787 F.2d 1385, 1390 (10th Cir. 1986) (concluding that, while a potential juror's acknowledgment that he was acquainted with government witnesses would necessitate further inquiry, that fact in and of itself does not compel a conclusion of bias); *Tinsley v. Borg*, 895 F.2d 520, 528-29 (9th Cir. 1990) (noting that, absent actual bias, courts have declined to find implied bias based on a juror's personal acquaintance with a witness); *see also Tomlin v. State*, 81 Nev. 620, 624-25, 407 P.2d 1020, 1022 (1965) (concluding that district court did not err in retaining juror after she informed district attorney's office she knew a witness but assured court she could remain impartial). Additionally, trial counsel for both parties did not appear concerned that the relationship between the witness and juror was anything more significant than a past work acquaintanceship. Under these circumstances, we conclude that appellant has not demonstrated that the trial court's failure to question the juror affected his substantial rights.

Seventh, appellant contends that comments made by the prosecutor indicating that appellant was blaming the car or police investigation constituted improper disparagement of legitimate defense tactics. Appellant did not object to either argument, and we discern no plain error, *Valdez v. State*, 124 Nev. 1172, 1190, 196 P.3d 465, 477 (2008). A prosecutor may not "ridicule or belittle the defendant or the case." *Earl v. State*, 111 Nev. 1304, 1311, 904 P.2d 1029, 1033 (1995); *see Browning v. State*, 124 Nev. 517, 534, 188 P.3d 60, 72 (2008) (recognizing that a prosecutor's disparagement of defense counsel or the legitimate tactics of defense counsel is improper). But here the challenged comments, when considered in context, did not belittle the defense case or tactics. *See Knight v. State*, 116 Nev. 140, 144-45, 993 P.2d 67, 71 (2000) (observing that "[a] prosecutor's comments should be viewed in context" when considering whether a defendant should be afforded relief). Instead, the comments responded to the substance of appellant's cross-examination of State witnesses, which sought to discredit the investigation or indicate a fault in the vehicle may have caused the collision. That response was within the bounds of permissible argument. *See Greene v. State*, 113 Nev. 157, 178, 931 P.2d 54, 67 (1997) (recognizing rebuttal arguments may permissibly respond to issues raised by the defense's closing), *receded from on other grounds by Byford v. State*, 116 Nev. 215, 235, 994 P.2d 700, 713 (2000).

Eighth, appellant argues that his aggregate sentence was excessive and disproportionate given the collision was the result of his drug and alcohol addiction rather than malice.

We discern no abuse of discretion. *See Martinez v. State*, 114 Nev. 735, 737-38, 961 P.2d 143, 145 (1998) (recognizing that sentencing courts have wide discretion in imposing sentence); *Sims v. State*, 107 Nev.

438, 439, 814 P.2d 63, 64 (1991) (recognizing that the legislature and sentencing courts are afforded great deference and a reviewing court "rarely will be required to engage in extended analysis to determine that a sentence is not constitutionally disproportionate" (quoting *Solem v. Helm*, 463 U.S. 277, 290 n.16 (1983))). A sentence that is within the statutory limits is not "cruel and unusual punishment unless the statute fixing punishment is unconstitutional or the sentence is so unreasonably disproportionate to the offense as to shock the conscience." *Blume v. State*, 112 Nev. 472, 475, 915 P.2d 282, 284 (1996) (quoting *Culverson v. State*, 95 Nev. 433, 435, 596 P.2d 220, 221-22 (1979)). Appellant's sentence falls within the parameters of the relevant statutes, and he does not allege those statutes are unconstitutional. *See* NRS 193.130(2)(d); NRS 453.336(2)(b); NRS 484B.653(9); NRS 484C.400(1)(c); NRS 484C.430(1). The district court sentenced him within the guidelines of NRS 176.035(1) to concurrent and consecutive sentences, which was in the district court's discretion, *see Pitmon v. State*, 131 Nev. 123, 128-29, 352 P.3d 655, 659 (Ct. App. 2015), and we conclude that the aggregate sentence imposed is not so grossly disproportionate so as to shock the conscience and constitute cruel and unusual punishment. *See Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (plurality opinion) (explaining the Eighth Amendment does not require strict proportionality between crime and sentence; it forbids only an extreme sentence that is grossly disproportionate to the crime).

Lastly, appellant contends that the cumulative effect of errors during trial warrants relief. "When evaluating a claim of cumulative error, we consider the following factors: '(1) whether the issue of guilt is close, (2) the quantity and character of the error, and (3) the gravity of the crime charged.'" *Valdez*, 124 Nev. at 1195, 196 P.3d at 481 (quoting *Mulder v.*

10

*State*, 116 Nev. 1, 17, 992 P.2d 845, 854-55 (2000)).   Appellant has demonstrated two errors: the erroneous admission of teleconferenced testimony and the failure to question a juror regarding potential bias. While the crimes charged were serious, the State presented overwhelming evidence of appellant's guilt.   Further, the errors did not have significant cumulative effect as the error admitting remote testimony was harmless due to the cumulative nature of the testimony and the record did not indicate that the juror was biased.

Having considered appellant's contentions and concluding that they do not warrant relief, we

ORDER the judgment of conviction AFFIRMED.[3]

_____, C.J.
Parraguirre

_____, J.
Stiglich

_____, Sr.J.
Gibbons

cc:   Hon. Tierra Danielle Jones, District Judge
Steven S. Owens
Attorney General/Carson City
Clark County District Attorney
Eighth District Court Clerk

---

[3]The Honorable Mark Gibbons, Senior Justice, participated in the decision of this matter under a general order of assignment.